UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| DAWN S., | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 2:17-cv-00391-DBH |
| | ) | |
| SOCIAL SECURITY ADMINISTRATION COMMISSIONER, | ) ) | |
| | ) | |
| Defendant | ) | |

## REPORT AND RECOMMENDED DECISION

On Plaintiff Dawn S.'s application for disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act, Defendant, the Social Security Administration Commissioner, found that Plaintiff has severe impairments, but retains the functional capacity to perform substantial gainful activity. Defendant, therefore, denied Plaintiff's request for disability benefits. Plaintiff filed this action to obtain judicial review of Defendant's final administrative decision pursuant to 42 U.S.C. § 405(g).

Following a review of the record, and after consideration of the parties' arguments, I recommend the Court vacate the administrative decision and remand the matter for further proceedings.

## The Administrative Findings

The Commissioner's final decision is the July 22, 2016, decision of the

Administrative Law Judge. (ALJ Decision, ECF No. 9-2.)[1] The ALJ's decision tracks the familiar five-step sequential evaluation process for analyzing social security disability claims, 20 C.F.R. §§ 404.1520, 416.920.

The ALJ found that Plaintiff has severe, but non-listing-level impairments consisting of degenerative disk disease of the cervical spine with posterior spondylosis at C3-4 and narrowing of the lateral recess, as well as disk narrowing with left-sided recess at C6-7, and bilateral carpal tunnel syndrome, right worse than left. (ALJ Decision ¶¶ 3 – 4, R. 18.) The ALJ determined Plaintiff has the residual functional capacity (RFC) to perform light work; frequently use her right upper extremity for the operation of hand controls; occasionally climb ramps and stairs, but never ladders, ropes or scaffolds; frequently balance and kneel; occasionally stoop, crouch or crawl; and frequently work overhead with both upper extremities. (*Id.* ¶ 5.)

Considering Plaintiff's RFC, Plaintiff's age and vocational profile, and the testimony of a vocational expert, the ALJ found Plaintiff is able to perform substantial gainful activity, including the representative jobs of counter clerk (DOT # 249.366-010), tanning salon attendant (# 359.567-014), and photocopy machine operator (# 207.685-014). Accordingly, the ALJ found Plaintiff was not under a disability for the period commencing August 12, 2013, through July 22, 2016. (ALJ Decision ¶¶ 10 – 11, R. 29 – 30.)

---

[1] Because the Appeals Council found no reason to review that decision, the Acting Commissioner's final decision is the ALJ's decision. (Notice of Appeals Council Action, ECF No. 9-2, R. 1.)

## Standard of Review

A court must affirm the administrative decision provided the decision is based on the correct legal standards and is supported by substantial evidence, even if the record contains evidence capable of supporting an alternative outcome. *Manso-Pizarro v. Sec'y of HHS*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v. Sec'y of HHS*, 819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS*, 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

## Discussion

The ALJ gave great weight to the opinions of Katherine Lapierre, a non-expert "single decision maker" (SDM),[2] and J.H. Hall, M.D., who reviewed Plaintiff's records on behalf of Disability Determination Services. (R. 25, citing Exs. 3A, 4A, 7A, 8A.) The ALJ also gave some weight to the opinion of the worker's compensation examining physician, Dr. William Boucher, but Dr. Boucher's opinion is not part of the record. (*Id*.) The ALJ gave little weight to treatment provider Paul Upham, M.D. (Ex. 5F.) The ALJ found Dr. Upham's opinions to be inconsistent with longitudinal findings and treatment

---

[2] As Defendant explained, "[a] Single Decision-Maker is an agency disability examiner who does not have medical credentials, and who is authorized to make an initial disability determination without approval of a medical consultant." (Response at 4 n.1.)

3

modalities, Plaintiff's primary reliance on non-prescribed marijuana for treatment, and Plaintiff's reported activities of daily living. (R. 26.) The ALJ gave even less weight to the opinion of Dr. Robert Phelps, who examined Plaintiff both upon referral by Plaintiff's counsel and upon referral by Disability Determination Services. (Exs. 7F, 9F, 10F.)

Plaintiff argues the ALJ erred when she placed any weight on an opinion of Ms. Lapierre, the SDM, or on a medical expert opinion that was not part of the record (i.e., Dr. Boucher). Plaintiff also contends the ALJ erred in her overall assessment of the expert medical opinion evidence.

In her decision, the ALJ wrote, "I give great weight to the assessments of Dr. Lapierre and Dr. Hall." (ALJ Decision at 10, R. 25.) Given the ALJ's description of Ms. Lapierre as "an advising physician to the Disability Determination Service," and her consistent reference to Ms. Lapierre as "Dr. Lapierre," the ALJ evidently believed Ms. Lapierre was a medical doctor. Defendant concedes that the ALJ's reliance on Ms. Lapierre's opinion was improper as Ms. Lapierre is not a medical professional. Defendant, however, maintains the ALJ's error was harmless because the ALJ relied more heavily on Dr. Hall's assessment and the RFC is consistent with Dr. Hall's assessment.

On February 14, 2015, Dr. Hall assessed Plaintiff's physical RFC based on Plaintiff's severe cervical degenerative disk disease (neck pain, arm numbness and weakness) and carpal tunnel syndrome (pain and difficulty with manipulation). As part of his assessment, Dr. Hall reviewed the January 2015 medical opinion of Dr. Phelps (Ex. 7F), and the records and opinions provided by SMHC Workwell, which contain Dr. Upham's records (Ex. 5F). (See Hall Assessment, Ex. 8A, R. 158 – 59.) Dr. Hall's RFC

4

opinion is supportive of the ALJ's RFC finding.³ Dr. Hall noted that his assessment was based on his review of the evidence of record, and that a consultative examination was required "to establish current severity of the individual's impairment(s)."⁴ (Ex. 7A, R. 147; Ex. 8A, R. 161.)

Defendant did not request a further examination of Plaintiff. On May 5, 2016, however, Dr. Phelps conducted an examination at the request of Plaintiff's counsel. (Ex. 9F.) Dr. Phelps had previously, on January 23, 2015, conducted the consultative examination on behalf of Disability Determination Services. (Ex. 7F.) At the time of his initial consultation, Dr. Phelps made numerous findings, but noted that he had not been provided any medical records to review. (*Id.*, R. 434.) For the examination at counsel's request, Dr. Phelps was provided relevant medical records. (*Id.*, R. 442.) Dr. Phelps' pertinent findings included:

> Probable thoracic outlet syndrome with + Adson's maneuver bilaterally by exam and by medical record review.
>
> Neck pain and arm numbness interfering with [activities of daily living] by history with an exam showing marked tenderness to palpation at the cervical spine and upper thoracic spine, painful cervical spine flexion and extension, limited cervical spine rotation, painful Spurling's testing with a medical record review showing cervical spine straightening by x-ray 2006, cervical spine spondylosis C3 – 4, C6 – 7 by MRI October 2013 with left sided recess stenosis at C6 – 7, small osteophytes, posterior spondylosis C3 – 4, with a C6 radiculopathy on the right.
>
> Painfully limited shoulder internal rotation, abduction and forward flexion bilaterally by exam.

---

³ Dr. Hall found a limitation to "frequent handling," but only on the right side. Ms. Lapierre opined that the frequent handling limitation should apply to both upper extremities.

⁴ Dr. Hall observed that the record reflected Plaintiff had experienced new physical and mental limitations since the last evaluation offered by Ms. Lapierre. (Ex. 7A, R. 143.)

5

Back, shoulder and neck pain with upper extremity strength testing by exam.

(*Id.*, R. 444.)

Based on his clinical findings and record review, Dr. Phelps completed a Physical RFC Assessment form, on which he stated his opinion that Plaintiff can lift 10 pounds occasionally and less than 10 pounds frequently, stand/walk no more than 2 hours in an 8-hour workday, sit no more than 6 hours, and only occasionally reach, handle, finger, and feel. (Ex. 10F, R. 446 – 48.)

Dr. Phelps was the only medical expert to examine and assess Plaintiff's physical RFC after Dr. Hall suggested the need for a consultative examination. Dr. Phelps's opinion was consistent with Dr. Upham's opinion with respect to the limitation to sedentary exertion, but not as restrictive as Dr. Upham's assessment that Plaintiff perform no shoulder-level or overhead work. (Ex. 5F, R. 368 – 69, 394 – 96, 409 – 11.)

The ALJ was unpersuaded by Dr. Upham and Dr. Phelps, and concluded Plaintiff's RFC was much less restrictive than found by Dr. Phelps. The ALJ reasoned that the expert opinions were not supported by the imaging studies, spinal surgery was not recommended, Plaintiff did not follow the recommendation for a carpal tunnel syndrome release procedure on the right side, Plaintiff was able to perform part time cashier work for several months, Plaintiff moved from prescribed medication to non-prescribed marijuana, and Plaintiff was able to perform activities of daily living consisting of unspecified light chores, babysitting, and shopping. (R. 26 – 27.) The ALJ also stated that she gave the opinion of Dr. Phelps even less weight than she gave the opinion of Dr. Upham, because Dr. Phelps "appears to have evaluated the claimant at the behest of the claimant's attorney in May of 2016." (*Id.*)

6

The ALJ also observed that Nancy Ball, M.D., conducted a neurological consultative exam in April 2014, and that the report of evaluation stated Plaintiff had full range of motion of both shoulders and the cervical spine in all planes. (R. 27, see also Ex. 12F, R. 456.)

Plaintiff argues that the ALJ impermissibly judged matters entrusted to experts when she rejected the opinions offered by Drs. Upham and Phelps. (Statement of Errors at 5 – 11.) According to Plaintiff, the ALJ's reasoning for rejecting the opinions demonstrates that she interpreted Plaintiff's medical records (such as Dr. Ball's range of motion findings), which is not permitted. (*Id.* at 6 – 11, citing *Poulin v. Colvin*, No. 2:14-cv-102, 2015 WL 1809194, at *3 (D. Me. 2015).) Plaintiff also argues the ALJ was not permitted to rely on Plaintiff's "sporatic activities" to conclude the medical opinions were unreliable. (*Id.* at 7 n.5, citing *Ormon v. Astrue*, 497 Fed. App'x 81 (1st Cir. 2012).) Plaintiff also contends the ALJ erred when she discredited Dr. Phelps' conclusions simply because he conducted his evaluation at the request of Plaintiff's counsel. (*Id.* at 8 – 9, citing *Gonzalez Perez v. Sec'y of HHS*, 812 F.2d 747, 749 (1st Cir. 1987) (holding that the fact that reports were obtained on referral from counsel was not a basis for rejecting the reports, stating that "[s]omething more susbstantive than just the timing and impetus of medical reports obtained after a claim is filed must support an ALJ's decision to discredit them").)[5]

The process by which the record evidence was established, and the ALJ assessed

---

[5] Plaintiff also maintains that Dr. Hall's opinion cannot override the opinion of Dr. Phelps because Dr. Phelps is an orthopedic specialist, and because Dr. Hall's assessment is not deserving of great weight given his notation that a consultative examination was required to assess the severity of Plaintiff's impairments. (Statement of Errors at 10.)

7

the record and determined Plaintiff's RFC is concerning. First, although Dr. Hall, a consulting examiner and the expert upon whom the ALJ relied to establish Plaintiff's RFC, recommended a physical examination for Plaintiff, neither Defendant, nor the ALJ requested an examination. The ALJ thus relied on the conclusions of an examiner who determined that an examination was necessary to establish the severity of Plaintiff's impairments. The degree of impairment is essential to any RFC finding.

Second, one of the ALJ's reasons for rejecting the report of the only physician (Dr. Phelps) who examined and assessed Plaintiff's RFC (i.e., because the exam was conducted at the request of Plaintiff's counsel) was not merit-based.

Third, in assessing the severity of Plaintiff's impairment, the ALJ placed great weight on the opinion of a single decision maker (Ms. Lapierre), whom she believed to be a doctor. Reliance on the opinion of a layperson on a medical issue would be error. While the ALJ stated she placed greater weight on the findings of Dr. Hall, given that the opinion of the single decision-maker supported Dr. Hall's findings, the ALJ referenced the opinions together when making the findings thus raising the possibility that Ms. Lapierre's opinion bolstered the ALJ's confidence in Dr. Hall's assessment, and the ALJ specifically overruled Plaintiff's objection to the ALJ's reliance on Ms. Lapierre's assessment (R. 25 n.1), on this record, the impact of the ALJ's misunderstanding of the role and credentials of the single decision maker cannot be easily disregarded. In fact, one could reasonably infer from the ALJ's decision that Ms. Lapierre's opinion at least in part contributed to the ALJ's decision to place great weight on Dr. Hall's opinion even though Dr. Hall, through his recommendation for a consultative examination, apparently believed further

development of the record was necessary.

Finally, the ALJ placed some weight on medical evidence – the assessment of Dr. Boucher following an independent medical exam – that was not directly part of the record. Referencing the summary of Dr. Boucher's findings prepared by another provider, but without Dr. Boucher's actual report, the ALJ evaluated the merit of Dr. Boucher's assessment, including Dr. Boucher's finding that Plaintiff could engage in overhead exertion with weights up to 10 pounds, and push or pull up to 30 pounds, which finding was consistent with the ALJ's RFC finding. (R. 25; see also Ex. 11F, R. 453.) Without the actual report, the ALJ arguably considered evidence that was not properly of record. Consideration of evidence outside the record is improper. *See*, *e.g.*, *Albalos v. Sullivan*, 907 F.2d 871, 874 (9th Cir. 1990); *Masotti v. Comm'r of Soc. Sec.*, No. 14-cv-5081, 2016 WL 5404632, at *8, 233 Soc. Sec. Rep. Serv. 661 (E.D.N.Y. Sept. 27, 2016); *Perine v. Astrue*, No. 1:08-cv-176, 2009 WL 2045038, at *1, 143 Soc. Sec. Rep. Serv. 605 (N.D. W. Va. July 9, 2009).

Plaintiff contends each of the concerns constitutes reversible error. Defendant argues that any error is harmless. Some of the alleged errors could be considered harmless if considered independently. For instance, the ALJ's reliance on Dr. Boucher's assessment despite the fact Dr. Boucher's actual report is not of record arguably could be viewed as harmless. Other alleged errors, such as the fact that in assessing the extent of Plaintiff's impairment and limitations, the ALJ erroneously gave great weight to the opinion of a layperson whom the ALJ believed to be a doctor, could be more problematic. *See, e.g.*, *Edwards v. Berryhill*, No. 17-cv-232-AJ, 2018 WL 1221159 at *8 (D.N.H. Mar. 7, 2018)

9

(ALJ's error in referencing findings of single decision-maker, whom ALJ described as a medical physician, "even if substantively harmless, still casts doubt on the reliability of the rest of her decision").

In this case, the Court is not required to determine whether any particular error alone requires remand. The effect of (a) the ALJ's decision, under the circumstances of this case, to give great weight on the opinion of a layperson (i.e., the single decision maker) as medical evidence, (b) the ALJ's assessment of and reliance on evidence not directly of record (i.e., the assessment of Dr. Boucher), and (c) the ALJ's rejection of an examining physician's opinion and adoption of Dr. Hall's opinion that was offered without the benefit of a physical examination Dr. Hall recommended, cannot reasonably be considered harmless. Further proceedings are warranted to reexamine Plaintiff's RFC and assess whether the RFC permits Plaintiff to engage in substantial gainful activity. In short, given the issues identified herein, remand will result in "more than an empty exercise." *Ward v. Comm'r of Soc. Sec.*, 211 F.3d 652, 656 (1st Cir. 2000); *cf. Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (explaining that error is harmless if it is "predictable with great confidence" that the administrative decision would be reinstated on remand based on overwhelming evidentiary support); *Voight v. Astrue*, No. 10-cv-7847, 2011 WL 6156841, at *14 (N.D. Ill. Dec. 12, 2011) (remanding in light of "the cumulative effect of … errors" where Court concluded it was "possible [the] errors had a very real impact on the outcome of the case before the ALJ").

## CONCLUSION

Based on the foregoing analysis, I recommend the Court vacate the administrative

decision and remand the matter for further proceedings.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 16th day of August, 2018.